IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA

| | |
|---|---|
| AMANDA BRADLEY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) CIVIL ACTION |
| v. | ) NO:_____ |
| | ) |
| TRANS UNION, LLC and | ) |
| BLACKHAWK ACQUISITION, | ) JURY TRIAL DEMANDED |
| LLC d/b/a PROMAX, | ) |
| | ) |
| Defendants. | ) |
| | ) |
| | ) |

## COMPLAINT

1. This is an action for damages brought by an individual consumer, Amanda Bradley, against the consumer reporting agencies Trans Union, LLC ("TU") and Blackhawk Acquisition, LLC d/b/a ProMax ("ProMax") for violations of the Fair Credit Reporting Act, 15 U.S.C. §§ 1681, *et seq.* as amended (the "FCRA").

2. This lawsuit involves two consumer reporting agencies ("CRAs") who did not use reasonable procedures to assure the maximum possible accuracy of the information they reported about Mr. Bradley in their consumer reports.

3. By failing to use reasonable procedures to assure maximum possible accuracy, Defendants mixed Ms. Bradley's consumer file with that of another individual who has a different middle name, last name, social security number, and address history. Defendants' actions have caused Ms. Bradley damages, including economic loss, lost opportunity to receive credit, damage to reputation, invasion of privacy, emotional distress and interference with her normal and usual activities.

4. This lawsuit seeks actual damages and punitive damages, as well as costs of suit and attorney fees for Ms. Bradley, resulting from Defendants' failures to comply with the FCRA.

## JURISDICTION AND VENUE

5. This Court has federal question jurisdiction over Plaintiff's FCRA claims pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1681p.

6. Venue is proper in this Court under 28 U.S.C. § 1391 as Defendants regularly conduct business in this district, including contracting to supply goods and services in this district. Additionally, Plaintiff resides in this district and the consumer reports at issue in this lawsuit were procured in this district.

## PARTIES

7. Ms. Bradley is a natural person and a "consumer" as defined by the FCRA, 15 U.S.C. § 1681a(c).

8. Defendant TU is a consumer reporting agency as defined by the FCRA, 15 U.S.C. § 1681a(f), and it conducts substantial and regular business activities in this judicial district, including selling consumer reports on residents of this judicial district.

9. Defendant ProMax is a consumer reporting agency as defined by the FCRA, 15 U.S.C. § 1681a(f) that conducts substantial and regular business activities in this judicial district, including selling consumer reports on residents of this judicial district.

10. Defendant ProMax also is a type of consumer reporting agency called a "reseller," as defined by the FCRA, 15 U.S.C. § 1681a(u).

## FACTUAL ALLEGATIONS

11. Congress enacted the FCRA to protect consumers from the harm caused by inaccurate reporting. To this end, the FCRA requires that all CRAs use reasonable procedures to assure the maximum possible accuracy of the personal and financial information compiled concerning consumers and sold to users by consumer reporting agencies. 15 U.S.C. § 1681e(b).

12. Defendant TU is subject to Section 1681e(b)'s requirements, as is Defendant ProMax, a reseller.

13. As a reseller, Defendant ProMax purchases consumers' credit information from other CRAs, such as Equifax, Experian, and TU.

14. Once Defendant ProMax receives consumer credit information from other CRAs, it assembles and merges that information into a credit report, which it then sells to third parties.

15. Courts have repeatedly held that resellers, like Defendant ProMax, do not meet the requirements of Section 1681e(b) by merely reproducing the information furnished to them by other credit bureaus. *See, Rogue v. CoreLogic Credco, LLC*, No. 19-cv-00260-BLW, 2020 WL 7061745 at *4 (D. Idaho Dec. 2, 2020) ("[D]istrict courts have repeatedly rejected Credco and other resellers' arguments that a reseller is only required to accurately reproduce the information furnished to it by other credit bureaus. These courts have, instead, found that, as a matter of law, a reseller can be subject to liability under § 1681e(b) for failing to follow reasonable procedures to assure the maximum possible accuracy of the information it provides on a consumer"); *Starkey v. Experian Information Solutions, Inc.*, 32 F. Supp. 3d 1105, 1109-11 (C.D. Cal. 2014) (rejecting Credco's argument that its report was "accurate" because it "fully and accurately included all of the information [the CRAs] provided," holding that a reseller, like other consumer reporting agencies, must employ reasonable procedures to assure the maximum

possible accuracy of the information in its report); *Dirosa v. Equifax Information Servs, LLC*, 2014 WL 3809202, at *3 (C.D. Cal. Jan. 21, 2014) (rejecting Credco's argument that it was not liable under § 1681e(b) because it "fully and accurately included all of the information [the CRAs] provided"); *Ocasio v. CoreLogic Credco, LLC*, 2015 WL 5722828, at **3-4 (D. N.J. Sept. 29, 2015) (rejecting Credco's argument that its procedures were reasonable as a matter of law under § 1681e(b) "because it accurately compiled and reported information collected from the credit bureaus"); *Starkey v. Experian Willoughby v. Equifax Information Svs., LLC*, 2013 WL 8351203, at **2-3 (N.D. Ala. Aug. 12, 2013) (finding that resellers are subject to the same requirements under § 1681e(b) as other consumer reporting agencies to follow reasonable procedures to assure the accuracy of its reports); *Waterman v. Experian Information Solutions, Inc.*, 2013 WL 675764, at **2-3 (C.D. Cal. Feb. 25, 2013) (same); *Dively v. Trans Union, LLC*, 2012 WL 246095, at **3-4 (E.D. Penn. Jan. 26, 2012) (same).

16. The Federal Trade Commission has also explained that, "[p]ersons who purchase consumer reports for resale (also known as 'resellers') are covered by the FCRA as consumer reporting agencies, and have all the obligations of other CRAs…" Prepared Statement of Fed. Trade Commiss. On the Fair Credit Reporting

Act Before the Senate Banking Committee on Banking, Housing and Urban Affairs, 2003 FTC LEXIS 101, 14-15 (July 10, 1993).

17. Notwithstanding all this notice, Defendant ProMax continues to sell consumer reports without sufficient independent investigation, audits, research, or review to assure that the information in the reports is accurate.

18. This lack of procedures is highlighted by Defendant ProMax's lack of procedures to prevent selling mixed files.

19. Defendant ProMax is aware that the CRAs it purchases information from have a long history of mixed file problems. This is especially true for TU.

20. Over the last ten years, TU has been sued hundreds of times by consumers whose files were mixed with a different consumer's file by TU.

21. In 2002, a jury awarded $5.3 million to a plaintiff whose TU credit report was mixed with a different person's credit history.

22. Defendant ProMax knows of TU's practice of mixing consumer files, but it refuses to implement any procedures to adequately review or analyze TU data to determine if TU is providing information from a mixed file.

23. Despite knowing about these lawsuits and TU's history of mixing consumer's files, Defendant ProMax took no actions to assure accuracy of the information it reported about Ms. Bradley even though it was obvious that TU had

mixed Ms. Bradley's file with the file of a different consumer who had a different name, address history, social security number, and credit accounts.

24. Instead, as is the case here, Defendant ProMax resold TU's information without conducting any level of review as to its accuracy. It did so even when the data had obvious red flags of a mixed file, including multiple different names on the report's face.

**I.  Facts Specific To Ms. Bradley**

25. In 2021, Ms. Bradley sought to purchase a vehicle through Grote Automotive.

26. As part of the purchase process, Grote Automotive purchased a consumer report about Ms. Bradley from ProMax.

27. To create the consumer report ordered by Grote Automotive, ProMax requested and obtained a consumer report about Ms. Bradley from TU.

28. The consumer report TU provided to ProMax included numerous accounts and identification information that did not belong to Ms. Bradley. Rather, these accounts and identification information belonged to another consumer, Amanda Knepp.

29. Once it obtained a consumer report from TU, ProMax assembled its own consumer report and furnished it to the auto loan company.

30. ProMax took no steps whatsoever to review, analyze, or audit the information it received from TU prior to reselling it.

31. Prior to selling the consumer report about Ms. Bradley, ProMax did nothing to reconcile the inconsistent information on the face of the credit report.

32. In its consumer reports, TU and ProMax mixed Ms. Bradley's file with Ms. Knepp's credit information, despite that the two consumers have different middle names, different last names, different social security numbers, and different address histories. For example, Defendants reported four different names for Ms. Bradley: "Bradley, Amanda L.," "Bradley, Amanda,M," "Branton, Amanda,L," and "Knepp, Amanda." Ms. Bradley has never used or been known by some of those names.

33. In mixing the two credit files, Defendants made Ms. Bradley's credit history appear significantly worse than her actual credit history. In particular, Defendants reported that Ms. Bradley had ten collection accounts and 22 inquiries in less than 12 months. Ms. Bradley does not have ten collection accounts or 22 inquiries in that timeframe.

34. As a result of Defendants' consumer reports, Grote Automotive told Ms. Bradley that it could not move forward with the transaction.

35. To show Grote Automotive that the information it had received was inaccurate, Ms. Bradley obtained information showing that the credit information reported by Defendants was inaccurate and she provided that information to Grote Automotive.

36. Ultimately, Ms. Bradley was able to move forward with the transaction with Grote Automotive, but the interest rate that Ms. Bradley was forced to pay was higher than it would have been had the inaccurate negative credit history not been included on Ms. Bradley's credit report.

37. Shortly after this incident, in an attempt to uncover the full extent of Defendants' inaccurate credit reporting about her, Ms. Bradley sent letters to TU and to ProMax in January 2022 in which she requested copies of her consumer file. She attached to her request copies of her driver's license and social security card for identity verification purposes.

38. Ms. Bradley received no response to her requests from either TU or ProMax, despite Section 1681g's requirement that, upon request from a consumer, a consumer reporting agency shall clearly and accurately disclose to the consumer "[a]ll information in the consumer's file at the time of the request." 15 U.S.C. § 1681g.

39. Defendants' failure to respond to Ms. Bradley's Section 1681g requests denied Ms. Bradley the ability to understand the totality of the information that Defendants had been reporting about her, as well as to whom Defendants had furnished her personal credit information.

40. On March 3, 2022, Ms. Bradley sent letters via certified mail to both TU and to ProMax. In the letters, she disputed the inaccurate information that they were reporting about her:

> I am writing to dispute information you have reported on my credit report. You have the information in my credit report mixed with information for another person and it is causing me a lot of problems and stress that you are providing this inaccurate information to my creditors. It looks like you have my file mixed with someone named Amanda Knepp, who has a different last name, middle name, social security number, and address. I'd ask that you review all of the personal information, the accounts, and the inquiries to make sure you are reporting information that belongs to me only. The information that belongs to this other person includes:
>
> - My middle initial is not "M"
> - My social security number does not end in 2506
> - My last name is not Knepp
> - My employment history does not include Foegley Landscape
> - I do not have accounts with Sunrisecred (AT&T/DirectTV), Midland Fund (CreditOne), Portfolio RC (Capital One Bank), Credit Coll (Allstate), AFNI (Comcast), CreditOne, US DOE, Countrywide, J.B. Mortgage, and Kitchen Acceptance. None of these accounts belong to me.

- Most of the inquiries do not belong to me.

41. Upon information and belief, Defendants received Ms. Bradley's dispute letter.

42. Upon information and belief, Defendant ProMax did not convey Ms. Bradley's dispute, together with all relevant information provided by Ms. Bradley, to TU.

43. Alternatively, Defendant ProMax forwarded Ms. Bradley's dispute to TU.

44. On March 17, 2022, Ms. Bradley received a letter from TU that contained a copy of her consumer report. Upon review of her credit report, Ms. Bradley noted that her consumer file was no longer mixed. The consumer report no longer contained Ms. Knepp's name, addresses, accounts, social security number, or other personal information.

45. The letter did not contain, however, most of the information required under Section 1681i following a dispute reinvestigation. In particular, TU failed to provide:

> (iii) a notice that, if requested by the consumer, a description of the procedure used to determine the accuracy and completeness of the information shall be provided to the consumer by the agency, including the business name and address of any furnisher of information contacted in connection with such information

11

> and the telephone number of such furnisher, if reasonably available;
> (iv) a notice that the consumer has the right to add a statement to the consumer's file disputing the accuracy or completeness of the information; and
> (v) a notice that the consumer has the right to request under subsection (d) that the consumer reporting agency furnish notifications under that subsection.

15 U.S.C. 1681i(a)(6).

46. Strangely, just a week after TU's letter, Ms. Bradley received another letter from TU dated March 24th informing her that "we are unable to locate a credit report for you."

47. As of the date of this Complaint, Ms. Bradley has received no response to her dispute from ProMax.

48. ProMax's failure to respond to Ms. Bradley's dispute violates the FCRA, including 15 U.S.C. § 1681i(f)(3), which requires it to "immediately reconvey [the CRA's dispute results] notice to the consumer."

49. As a result of Defendants' conduct, Ms. Bradley has suffered, and continues to suffer, actual damages, including economic loss, lost opportunity to receive credit, damage to reputation, invasion of privacy, emotional distress and interference with her normal and usual activities for which she seeks damages in an amount to be determined by the jury.

**FIRST CLAIM FOR RELIEF**

## (15 U.S.C. § 1681e(b))

### (Against both Defendants)

50. Ms. Bradley incorporates the paragraphs 1-49 as if fully set forth herein.

51. Defendants violated 15 U.S.C. § 1681e(b) by failing to follow reasonable procedures to assure maximum possible accuracy in the preparation of the consumer reports furnished regarding Plaintiff.

52. Defendants knew their obligations under the FCRA. These obligations are well established in the plain language of the FCRA, in the promulgations of the Federal Trade Commission, and in well-established case law.

53. Defendants obtained or had available substantial written materials that apprised them of their duties under the FCRA.

54. Despite knowing of these legal obligations, Defendants acted in reckless and conscious disregard of their known duties and Plaintiff's rights under the FCRA.

55. Defendants' violations of the FCRA were willful, rendering them liable pursuant to 15 U.S.C. § 1681n. In the alternative, Defendants were negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

56. As a result of this conduct by Defendants, Ms. Bradley has suffered, and continues to suffer, actual damages, including economic loss, lost opportunity

to receive credit, damage to reputation, invasion of privacy, emotional distress and interference with her normal and usual activities for which she seeks damages in an amount to be determined by the jury.

57. Plaintiff seeks her actual damages and punitive damages in amounts to be determined by the jury, pursuant to 15 U.S.C. § 1681n and 15 U.S.C. § 1681o.

58. Plaintiff seeks her attorney fees and costs, pursuant to 15 U.S.C. § 1681n and 15 U.S.C. § 1681o.

## SECOND CLAIM FOR RELIEF

## (15 U.S.C. § 1681g)

## (Against both Defendants)

59. Ms. Bradley incorporates the paragraphs 1-49 as if fully set forth herein.

60. Defendants violated 15 U.S.C. § 1681g by failing to clearly and accurately disclose to Ms. Bradley all information in her file at the time of her request.

61. Defendants knew their obligations under the FCRA. These obligations are well established in the plain language of the FCRA, in the promulgations of the Federal Trade Commission, and in well-established case law.

62. Defendants obtained or had available substantial written materials that apprised them of their duties under the FCRA.

63. Despite knowing of these legal obligations, Defendants acted in reckless and conscious disregard of their known duties and Plaintiff's rights under the FCRA.

64. Defendants' violations of the FCRA were willful, rendering them liable pursuant to 15 U.S.C. § 1681n. In the alternative, Defendants were negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

65. As a result of this conduct by Defendants, Ms. Bradley has suffered, and continues to suffer, actual damages, including economic loss, lost opportunity to receive credit, damage to reputation, invasion of privacy, emotional distress and interference with her normal and usual activities for which she seeks damages in an amount to be determined by the jury.

66. Plaintiff seeks her actual damages and punitive damages in amounts to be determined by the jury, pursuant to 15 U.S.C. § 1681n and 15 U.S.C. § 1681o.

67. Plaintiff seeks her attorney fees and costs, pursuant to 15 U.S.C. § 1681n and 15 U.S.C. § 1681o.

## THIRD CLAIM FOR RELIEF

### (15 U.S.C. § 1681i)

### (Against both Defendants)

68. Ms. Bradley incorporates the paragraphs 1-49 as if fully set forth herein.

69. Defendant ProMax violated 15 U.S.C. § 1681i(f)(2)(A) by failing to review Ms. Bradley's dispute to determine whether the disputed information was inaccurate as a result of an act or omission by ProMax. Rather, Defendant ProMax received Ms. Bradley's dispute and took no action whatsoever.

70. Alternatively, Defendant ProMax reviewed Ms. Bradley's dispute and determined that the disputed inaccurate information was the result of TU's acts or omissions, but failed to convey Ms. Bradley's dispute, together with all relevant information provided by Ms. Bradley, to TU in violation of 15 U.S.C. § 1681i(f)(2)(B)(ii).

71. Alternatively, Defendant ProMax reviewed Ms. Bradley's dispute and determined that the disputed inaccurate information was the result of TU's acts or omissions, and forwarded Ms. Bradley's dispute to TU. TU then completed its reinvestigation and provided Defendant ProMax with the results. Defendant ProMax violated 15 U.S.C. § 1681i(f)(3) by failing to "immediately reconvey [the CRA's dispute results] notice to the consumer."

72. Defendant TU violated 15 U.S.C. § 1681i(a)(6) when it failed to provide to Ms. Bradley:

> (iii) a notice that, if requested by the consumer, a description of the procedure used to determine the accuracy and completeness of the information shall be provided to the consumer by the agency, including the business name and address of any furnisher

16

        of information contacted in connection with such information and the telephone number of such furnisher, if reasonably available;

        (iv) a notice that the consumer has the right to add a statement to the consumer's file disputing the accuracy or completeness of the information; and

        (v) a notice that the consumer has the right to request under subsection (d) that the consumer reporting agency furnish notifications under that subsection.

73. Defendants knew their obligations under the FCRA. These obligations are well established in the plain language of the FCRA, in the promulgations of the Federal Trade Commission, and in well-established case law.

74. Defendants obtained or had available substantial written materials that apprised them of their duties under the FCRA.

75. Despite knowing of these legal obligations, Defendants acted in reckless and conscious disregard of their known duties and Plaintiff's rights under the FCRA.

76. Defendants' violations of the FCRA were willful, rendering them liable pursuant to 15 U.S.C. § 1681n. In the alternative, Defendants were negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

77. As a result of this conduct by Defendants, Ms. Bradley has suffered, and continues to suffer, actual damages, including economic loss, lost opportunity to receive credit, damage to reputation, invasion of privacy, emotional distress and

interference with her normal and usual activities for which she seeks damages in an amount to be determined by the jury.

78. Plaintiff seeks her actual damages and punitive damages in amounts to be determined by the jury, pursuant to 15 U.S.C. § 1681n and 15 U.S.C. § 1681o.

79. Plaintiff seeks her attorney fees and costs, pursuant to 15 U.S.C. § 1681n and 15 U.S.C. § 1681o.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff seeks judgment in her favor and damages against Defendants in the form of:

    a. Actual damages;

    b. Punitive Damages;

    c. Costs and reasonable attorneys' fees; and

    d. Other further relief as may be necessary, just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury.

DATED: May 3, 2022

By: /s/ Jeffrey B. Sand

Jeffrey B. Sand
WEINER & SAND LLC
800 Battery Avenue SE
Suite 100
Atlanta, GA  30339
(404) 205-5029 (Tel.)
(866) 800-1482 (Fax)
js@wsjustice.com

COUNSEL FOR PLAINTIFF